**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| Interbank Funding Corp., *et al.*, | ) |
| | ) Case No. 02-41590 (BRL) |
| Debtors. | ) Jointly Administered |
| | ) |
| IBF Fund Liquidating, LLC, | ) |
| | ) Adv. Proc. No. 07-1482 |
| Plaintiffs, | ) |
| -against- | ) |
| Chadmoore Wireless Group Inc., Chadmoore Shareholder Liquidating Trust, Robert Moore and Stephen Radusch, | ) |
| | ) |
| Defendants. | ) |

APPERANCES:

KAYE SCHOLER, LLP
425 Park Avenue
New York, NY 10022
Counsel for the IBF Fund Liquidating, LLC
And for Counsel for Arthur Steinberg, ICA Trustee
By:    Arthur J. Steinberg, Esq.
          Heath D. Rosenblatt, Esq.


FOX ROTHSCHILD LLP
100 Park Avenue, 15th Floor
New York, NY 10017
Counsel for Chadmoore Wireless Group, Inc.
By:    Yann Geron, Esq.


BAINTON MCCARTHY
26 Broadway
New York, NY 10004
Counsel for Robert Moore
By:    J. Joseph Bainton, Esq.

    Michael J. Cohen, Esq.

Kravet & Vogel, LLP
1040 Avenue of the Americas, Suite 1101
New York, NY 10018
Counsel for Stephen Radusch
By:    Joseph A. Vogel, Esq.

Before: Honorable Burton R. Lifland

## MEMORANDUM DECISION DETERMINING MOTIONS AND CROSS MOTIONS FOR SUMMARY JUDGMENT

Before the Court, initially, were four motions and two cross-motions for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "Rules"), made applicable to this adversary proceeding pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 7056-1 (the "Local Rules"). The motions and cross motions involved nearly all counts of the complaint. A hearing was held on August 6, 2007 (the "Hearing"). Following the Hearing, two motions for approval of settlements were filed, relating to various counts involved in the previous motions for summary judgment. As a result of the settlements, the multiple summary judgment motions and cross motions have been whittled down to Counts V, VI, IX, X and XI.

## FACTS

The following are the relevant undisputed facts: On June 7, 2002, while under investigation by the United States Securities and Exchange Commission, the IBF Collateralized Finance Corporation ("CFC") and IBF VI-Secured Lending Corporation ("SLC" and, together with CFC, the "Funds"), InterBank Funding Corporation ("IBF" and together with the Funds, the

2

"Debtors"), filed voluntary petitions for relief under title 11, United States Code (the "Bankruptcy Code"). On July 23, 2002, the SEC filed a complaint against, inter alia, IBF and the Funds commencing an enforcement action in the District Court for the Southern District of New York (the "District Court").[1] On December 5, 2002, on motion of the SEC, the District Court entered an order (the December 5 Order) appointing Arthur J. Steinberg ("Steinberg") to act as the ICA Trustee for the Funds and their subsidiaries pursuant to the Investment Company Act of 1940, title 15, United States Code. *See In re InterBank Funding Corp.,* 310 B.R. 238, 242-43 (Bankr. S.D.N.Y. 2004). Since then, the ICA Trustee, Steinberg, has qualified and is acting as Chapter 11 Trustee for the Debtors, who have confirmed and are implementing a Liquidation Plan.

Chadmoore Wireless Group ("Chadmoore") was a Colorado corporation that maintained its principal place of business in Las Vegas, Nevada. In February 2002, Chadmoore closed the sale of substantially all of its assets to another company. Chadmoore filed articles of dissolution under Colorado law on February 22, 2002. Chadmoore's dissolution was effective on February 23, 2002. At or about the same time, Chadmoore filed a Form 8-K with the SEC describing the commencement of its voluntary dissolution.

At all relevant times, Robert Moore ("Moore") was President, CEO and a Director of the Chadmoore Board and Radusch served as Chief Financial and Accounting Officer of Chadmoore. Following Chadmoore's dissolution, there were only three remaining members on the Board of Directors (the "Chadmoore Board"). As part of the sale of the Debtors' interest in

---

[1] *Securities and Exchange Commission v. IBF Collateralized Finance Corporation, et al.,* No. 02-CV-5713 (JSM) ("SEC Litigation").

3

US Mills to Sunset (described fully in footnote 3), the Trustee negotiated the Chadmoore Put with Sunset Brands, Inc. and Todd Sanders ("Sanders"). Fund LLC required the Chadmoore Put, or some other similar credit enhancement, to consummate the sale of US Mills to Sunset. The Chadmoore Put included a representation that Chadmoore had "full power, right and authority" to execute, deliver and perform under the Chadmoore Put; that the execution, delivery and performance by Chadmoore under the Chadmoore Put was "duly and validly authorized by all necessary actions on the part of Chadmoore" and would not conflict with Chadmoore's corporate formation documents or any applicable law; and that no further approvals, consents or other actions by Chadmoore or any other person or entity were required. The Chadmoore Put included a representation that Moore was authorized to execute and deliver the Chadmoore Put, that Moore had obtained all required approvals, and that the Chadmoore Put was a binding obligation on Chadmoore. The Chadmoore Put also included a covenant restriction requested by Fund LLC that prohibited Chadmoore from disbursing in excess of 110% of the cash required for the Chadmoore Put.

Steinberg knew that Chadmoore was in dissolution before he signed the Chadmoore Put. Moore signed the Chadmoore Put on Chadmoore's behalf without approval of Chadmoore's Board of Directors, of which he was a member. When Moore executed the Chadmoore Put, he inserted by hand the term "President" on the title line of the Chadmoore Put. Moore admits that he signed the Chadmoore Put intending that it would not be enforceable against Chadmoore. Moore concedes that he signed the Chadmoore Put to protect his friend, Sanders, who allegedly led

4

Moore to believe he would have had serious financial difficulty and possibly been subject to physical harm if Moore did not sign the Chadmoore Put.[2]

The Chadmoore Put matured by its terms on November 6, 2006. Chadmoore refused to perform under the Chadmoore Put and disclosed in a Form 8-K that, prior to November 2006, certain members of the Board had no knowledge of the Chadmoore Put.

**Procedural Background**

The initial complaint (the "Complaint") was filed on February 14, 2007 by IBF Fund Liquidating LLC ("Fund LLC") against Defendants Chadmoore, Moore, and Stephen Radusch ("Radusch"). The Complaint relates to events that took place in November 2005 involving the "Chadmoore Put."[3] Along with the Complaint, Fund LLC requested a preliminary injunction to prevent Moore and Radusch from dissipating funds that had allegedly been wrongly distributed by Chadmoore to them. Moore and Radusch opposed the preliminary injunction. Radusch filed a motion to dismiss the Complaint based on lack of subject matter jurisdiction, improper venue and failure to properly plead. This Court denied the motions to dismiss and granted the preliminary injunction motion on April 23, 2007. The preliminary injunction required specific

---

[2] Moore states, "[i]n an exercise of terrible judgment motivated by a concern for Sanders' life and limb, believing that no rational business person … could ever believe that the Chadmoore Put was enforceable…. Moore signed the document to provide the "window dressing to the Bankruptcy Court."" *See* Moore Answer at ¶ 75.

[3] In March 2005, Fund LLC moved for approval of a sale of US Mills, Inc. to an entity called Sunset Brands, Inc. After various arrangements for the sale fell through, Fund LLC and Sunset Brands negotiated an arrangement that involved a large amount of seller financing, and Fund LLC required a third party credit enhancement, including, among others, a convertible debenture sale agreement known as the "Chadmoore Put." The Chadmoore Put required Chadmoore to purchase $2.5 million of principal amount of the debenture from Fund LLC on November 6, 2006 if the Debenture was substantially unpaid on such date. The Chadmoore Put included in its terms various representations and warranties. After the Chadmoore Put matured on November 6, 2006, Fund LLC made demand on Chadmoore to perform under the Chadmoore Put. Chadmoore refused to honor its contractual obligation and claimed in its subsequent Form 8-K filing that two directors (not Moore) had no prior knowledge of the Chadmoore Put.

amounts to be placed in escrow, preventing transfers of assets and required that Moore and Radusch provide Fund LLC with an accounting. On May 8, 2007, Moore and Radusch filed statements indicating that they did not comply with the escrow requirements of the preliminary injunction.[4] (*See* ECF Docket # 55, 56). On May 14, 2007, Fund LLC moved for sanctions against Moore and Radusch for failing to comply with the escrow and accounting requirements of the preliminary injunction. On May 30, 2007, the Court entered the contempt order, requiring additional disclosures and adjourning the sanctions portion of the motion.[5] A further hearing on the contempt motion was held on September 18, 2007. At that time, the Court granted Fund LLC's request for a weekly monetary sanction, required additional disclosures, and other relief. The Court heard additional argument relating to the contempt motion on October 2, 2007.

On September 18, 2007, the Court approved the settlement agreement between Chadmoore and Fund LLC (the "Chadmoore Settlement Agreement"). The Chadmoore Settlement Agreement provided for a $750,000 payment to Fund LLC in return for a full resolution of all claims Fund LLC had against Chadmoore. Additionally, Chadmoore agreed to assign its claims against Moore and Radusch to Fund LLC.

On October 2, 2007, the Court approved the settlement agreement between Radusch and Fund LLC (the "Radusch Settlement Agreement"). The Radusch Settlement Agreement provided for a payment of $75,000 to Fund LCC and the assignment of any claims against various parties.

---

[4] Radusch's statement indicated that he deposited just over $2000, which was $49,000.00 short of the amount he was required to deposit.

[5] Moore filed a motion to amend or alter the contempt order on June 28, 2007. The motion was denied on July 19, 2007.

6

Fund LLC agreed to dismiss its claims against Radusch (which were not involved in the summary judgment motions) and agreed to dismiss any claims against Radusch that Fund LLC acquired from Chadmoore as part of the Chadmoore Settlement Agreement.

The Summary Judgment Motions and Cross-Motions

The first motion for summary judgment was filed by Fund LLC against Moore. Fund LLC contends that because the admissions made by Moore in his answer and amended answer are conclusive for purposes of summary judgment, on the basis of those admissions, summary judgment is warranted on Count VI of the Complaint. Moore filed his opposition to these contentions.

The second motion for summary judgment was filed by Moore relating to all counts of the Complaint, including Fund LLC's counts against Chadmoore (which were dismissed in accordance with the Chadmoore Settlement Agreement).

The third motion for summary judgment was filed by Chadmoore related to Fund LLC's counts against Chadmoore.[6] Pursuant to the Chadmoore Settlement Agreement, the claims against Chadmoore have been resolved.

The fourth motion for summary judgment was filed by Chadmoore against Moore and Radusch. As part of the settlement between Chadmoore and Fund LLC, Chadmoore has assigned its claims against Moore and Radusch to Fund LLC. As part of the Radusch Settlement Agreement, Fund

---

[6] Both Moore, contending he has standing because Chadmoore has asserted cross-claims against Moore that depends on Chadmoore's liability to Fund LLC, and Chadmoore filed summary judgment motions relating to the claims filed against Chadmoore.

7

LLC has agreed to dismiss the claims filed by Chadmoore against Radusch. The issue as to whether Fund LLC, as assignee, can pursue Chadmoore's claims against Moore as a result of the Chadmoore Settlement is not currently before the Court and will need to be briefed and argued before the Court will make a determination.

## DISCUSSION

### Jurisdiction

This Court has subject matter jurisdiction over the dispute pursuant to the order dated July 8, 2004 in the SEC Enforcement Action, referring jurisdiction over all matters involving the disposition of Fund LLC's assets to this Court. The SEC Enforcement Action is ongoing and was not dependent on or affected by confirmation of the liquidating plan in the bankruptcy cases. In addition, this adversary proceeding lawsuit is a proceeding "arising in" a case under title 11. *See* 28 U.S.C. § 1334(b) (conferring original but not exclusive jurisdiction on the district courts over all civil proceedings "arising under title 11 or arising in or related to cases under title 11."); 28 U.S.C. § 157(a) (Authorizing district courts to refer such matters to the bankruptcy courts.); *see also* 1 Collier's on Bankruptcy ¶ 3.02[5] (15th ed.).[7]

### Summary Judgment Standard

Rule 56(c), made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R.

---

[7] On May 18, 2007, Moore filed a motion to dismiss for lack of subject matter jurisdiction the Complaint pursuant to Rule 12(b)(6). The hearing on Moore's motion to dismiss was adjourned until after the summary judgment proceedings were complete.

8

CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *GlobalNet Financial.com, Inc. v. Frank Crystal & Co.,* 449 F.3d 377, 381 (2d Cir. 2006) *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir. 1998). Summary judgment is appropriate if, in light of the evidence presented, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). On a summary judgment motion, the moving party has the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 249; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *United States v. Certain Funds on Deposit in Scudder Tax Free Inv. Account No. 2505103*, 998 F.2d 129, 131 (2d Cir. 1993). Once the movant has made its showing, the burden of production shifts to the nonmovant who must, "go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, establish that there is a specific and genuine issue of material fact warranting a trial." *Celotex*, 477 U.S. at 324 (*quoting* Fed.R.Civ.P. 56(c)). The nonmovant cannot defeat a summary judgment motion by casting some metaphysical doubt on the moving party's assertions. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). There is no genuine issue for trial if the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *See Matsushita*, 475 U.S. at 587.

Fund LLC's Summary Judgment Motion: Count VI

Both Fund LLC and Moore moved for summary judgment on Count VI of the Complaint. Fund LLC contends: (i) Moore is personally liable by Colorado statute for signing the Chadmoore Put without authority or a good faith belief that he had authority; (ii) Moore is personally liable

9

under New York law for breach of the implied warranty of authority because he executed the Chadmoore Put on behalf of Chadmoore without authority from Chadmoore; and (iii) Moore defrauded Fund LLC by signing the Chadmoore Put without authority and by representing that he had the required authority.

*Colorado Business Corporations Law*

Fund LLC relies on Article 102 of Title 7 of the Colorado Business Corporation Act, titled "Incorporation," which states:

> All persons purporting to act as or on behalf of a corporation without authority to do so and without good faith belief that they have such authority shall be jointly and severally liable for all liabilities incurred or arising as a result thereof.

C.R.S. § 7-102-104 (2006) (enacted in 1994; previously codified as § 7-3-104). Fund LLC summarily stated that the statute is clear and unambiguous. However, there is no case law interpreting the statute as Fund LLC would apply it here. In fact, legislative history and caselaw interpreting a previous iteration of the statute specifically suggest that it was not meant to apply here, and there is no indication that the revision of the previous iteration was meant to change that intent. Courts interpreting past iterations of the statute strongly suggest that its applicability turns on whether the corporation involved was ever incorporated.[8] *See Micciche v. Billings*, 727 P.2d 367, 371 (Colo. 1986) (finding purpose of the statute was to, "impose personal liability upon those persons who take it upon themselves to act as a corporation without ever having undertaken any bona fide effort to achieve corporate status"); *see also Sims v. Ottenhoff*, 879 P2d 436, 437 (Colo. Ct. App. 1994). In *Micciche*, the court held that because the corporation was

---

[8] Fund LLC contends that because the courts cited above were working under a previous iteration of the statute, their commentary on the legislative history is irrelevant. However, the changes made from the previous iteration to the one in effect today are not so drastic that previous interpretations of the law are irrelevant.

10

suspended, it still existed and therefore could be reinstated, so the statute did not assign liability to an agent acting on behalf of the corporation. *Micciche,* 727 P.2d at 371 ("We conclude that section 7-3-104, 3 C.R.S. (1973), does not impose liability upon corporate officers for corporate obligations incurred while the corporation was operating under a suspended status but was still a valid legal entity."); *see also Jean Claude Boisset Wines U.S.A., Inc. v. Newton,* 830 P.2d 1134, 1135 (Colo. 1992). The *Micciche* court went into great detail regarding the difference between a corporation that never existed, and a corporation that was merely suspended. *Id.* at 370-72. The case before this Court involves a dissolved corporation. I decline to find that a dissolved corporation, which may transact business relating to its winding up or liquidation, should be treated as a corporation that never existed. Summary judgment is granted in favor of Moore on the basis that because efforts were undertaken to incorporate Chadmoore, as a matter of law, Moore cannot be held liable under C.R.S. § 7-102-104.

*New York Breach of Implied Warranty of Authority*

The Chadmoore Put contains a choice of law provision adopting New York law. Fund LLC contends that pursuant to New York law, summary judgment can be granted against Moore on Count VI on the basis that Moore breached the implied warranty of authority. An action may lie in breach of implied warranty of authority when an agent executes an agreement purportedly on behalf of a principal; without authority from the principal; and damages result. *Cargo Ships El Yam, Ltd. v. Stearns Foster Co.*, 149 F. Supp. 754, 762 (S.D.N.Y. 1956); *Penn. Building Comp. v. Schaub*, 789 N.Y.S.2d 112 (App. Div. 1st Dep't 2005). The Restatement of Agency provides,

> A person who purports to make a contract, representation, or conveyance to or with a third party on behalf of another person, lacking power to bind that person, gives an implied warranty of authority to the third party and is subject to liability to the third party

>for damages for loss caused by breach of that warranty, including loss of the benefit expected from performance by the principal.

Restatement (Third) of Agency § 6.10 (2006). New York courts recognize that a purported agent who signs a contract on behalf of his principal makes an implied warranty of authority to the other party to the contract. *See*, *e.g.*, *Campbell v. Muller*, 43 N.Y.S. 233 (N.Y. App. Term 1897) ("Wherever a party undertakes to do any act as the agent of another, if he does not possess any authority from the principal thereof,…he will be personally responsible thereof to the person with whom he is dealing for or on account of his principal."); *see also Moore v. Maddock*, 167 N.E. 420, 572 (N.Y. 1929).

Moore acknowledged that he signed the Chadmoore Put as President of Chadmoore and that he knew he did not have authority from the Board of Directors of Chadmoore at the time he executed the Chadmoore Put. In fact, Moore indicated that he signed the Chadmoore Put intending that it would never be enforceable. Yet he did signed the Chadmoore Put, and all of its accompanying representations and warranties.[9]

Moore cites cases holding that an agent can only be held liable for contracts signed without authority to the extent the contract would have been enforceable against the principal but for the lack of authority of the agent. *Broughton v. Dona*, 101 A.D.2d 897, 898 (App. Div. 3d Dep't 1984); *Dung v. Parker*, 52 N.Y. 494, 500 (1873). However, New York courts have specifically ruled that in the case of agents executing contracts on behalf of dissolved corporations, those agents are personally liable for the contracts, even if the contracts did not relating to the winding

---

[9] Counsel for Moore conceded at the Hearing that Moore signed the Chadmoore Put and that the Chadmoore Put included the representations, but stated that Moore never reviewed them.

up of the corporation. *See Brandes Meat Corp. v. Cromer*, 537 N.Y.S.2d 177 (App. Div. 2d Dep't 1989) (holding principal liable when sale of goods took place four years after corporation dissolved and sale was inconsistent with winding up affairs of business); *Penn. Building Comp. v. Schaub*, 789 N.Y.S.2d 112 (App. Div. 1st Dep't 2005) (holding individual responsible when he signed lease as president of a dissolved corporation and lease was not consistent with dissolution of company); *Imero Fiorentino Assoc., Inc. v. Green*, 447 N.Y.S.2d 942 (App. Div. 1st Dep't 1982) (holding individual responsible when he signed letter agreement on behalf of principal); *see also* CORPUS JURIS SECUNDUM, Corporations, §915 Contracts ("[A]n individual who enters into a contract on behalf of a dissolved or suspended corporation may be individually obligated on that contract."). Fund LLC's motion for summary judgment on implied warranty of authority is granted. There are simply no facts asserted by Moore that would lead to a different result. Moore does not deny that he signed the Chadmoore Put as President of Chadmoore without actually having authority to do so. Moore does not deny that as a result of his signing the Chadmoore Put, Chadmoore defaulted on its obligation on the Chadmoore Put.

The damages resulting from Moore's breach of the implied warranty of authority include the third-party financial accommodations owed under the Chadmoore Put that supported $2.5 million of the Debenture owing from Sunset and all injury resulting from his want of power, including the costs of an unsuccessful action against the alleged principal. *See Campbell v. Muller*, 43 N.Y.S. 233, 235 (N.Y. App. Term 1897) (holding "on the question of damages the agent's liability is not necessarily measured by the contract, but embraces all injury resulting from his want of power, which was held to include the costs of an unsuccessful action against the

13

alleged principal"); *see also Dailey Bros., Inc. v. W.A. Clements Co.*, 198 N.Y.S. 387, 389 (N.Y. Sup. Ct. 1923).

*Fraud*

Fund LLC also contends that summary judgment on Count VI is warranted pursuant to New York law on fraud. The elements required for a finding of fraud are: 1) misrepresentation, concealment or nondisclosure of a material fact; 2) knowledge of falsity, or scienter; 3) intent to deceive; 4) justifiable reliance; and 5) injury. *Diplomat Direct Marketing Corporation v. Stylesite Marketing, Inc. (In re Stylesite Marketing Inc.)*, 253 B.R. 503, 509 (Bankr. S.D.N.Y. 2000). It is undisputed that Moore signed the Chadmoore Put as president of Chadmoore, that the Chadmoore Put included warranties and representations that indicated Moore had the authority to sign, and that Chadmoore could validly execute the Chadmoore Put, that Moore knew that he did not have authority to sign the Chadmoore Put, and that Moore signed the Chadmoore Put with the intent that it would not be enforceable.

However, Moore contends that because Fund LLC was on notice that Chadmoore was in dissolution, Fund LLC could have, or should have, known that Moore did not have authority and that Chadmoore could not execute the Chadmoore Put because of its dissolution status[10], and therefore Fund LLC cannot demonstrate justifiable reliance. New York courts have noted that parties to a transaction may not justifiably rely on information they are "on notice" may not be true, especially when the parties are sophisticated and have a means of determining the truth for themselves. *Hyosung America, Inc. v. Sumagh Textile Co.*, 137 F.3d 75, 78-79 (2d Cir. 1998)

---

[10] As discussed below, whether Chadmoore was prohibited by Colorado law from transacting the Chadmoore Put because of its dissolution statuts is a question of fact. Moore contends that Chadmoore's dissolution status should have tipped off Fund LLC to question Moore's authority to enter into the Chadmoore Put.

14

(noting courts are not inclined to find justifiable reliance where sophisticated businessmen involved in large transactions "enjoy access to critical information but fail to take advantage of that access."); *see also Banque Franco-Hellenique de Commerce Int'l et Maritime, S.A. v. Christophides*, 106 F.3d 22, 27 (2d Cir. 1997). In their assessment of reasonable reliance, courts consider the full range of circumstances surrounding the transaction at issue, including its complexity and magnitude, the sophistication of the parties, and the content of any agreements between the parties. *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 195 (2d Cir. 2003). In *Royal American Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011 (2d Cir. 1989), the Second Circuit found reliance to be unreasonable as a matter of law when a plaintiff based its reliance on the defendant's counsel's interpretation of a insurance statute because the language of the statute was equally available to the parties and that the plaintiff was on guard of its import, any reliance by the plaintiff on the defendant's representation of the content and interpretation of the insurance statute was unjustifiable. *Id.* at 1016. Both parties in this case, Fund LLC, as trustee and Moore, as president of Chadmoore, were sophisticated.

"[T]he question of what constitutes reasonable reliance [in a fraud claim] is always nettlesome because it is to fact-intensive." *Schlaifer Nance & Co. v. The Estate of Andy Warhol*, 119 F.3d 91, 98 (2d Cir. 1997). Whether Fund LLC was reasonable to rely on Moore's execution of the Chadmoore Put because of his position with Chadmoore and because of the representations and warranties in the Chadmoore Put, and to what extent Fund LLC should have, if at all, inquired further about Moore's authorization is a question of fact. Summary judgment motions brought by both movants as to fraud is denied.

Moore's Summary Judgment Motion

Moore moved for summary judgment on Count V (Breach of Fiduciary Duty), Count IX (Causing Improper Shareholder Distribution), Count X (Fraudulent Transfers), and Count XI (Avoidance of Improper Shareholder Distribution). Fund LLC cross-moved for summary judgment, arguing that the Chadmoore Put is enforceable.

*Breach of Fiduciary Duty*

Fund LLC contends that Moore's execution of the Chadmoore Put, and the subsequent concealment of the Chadmoore Put from the Chadmoore Board constituted a breach of fiduciary duty. In Moore's own words, his acts were an exercise of "terrible judgment." However, in order for Fund LLC to have standing to bring a breach of fiduciary duty claim against Moore, Fund LLC must establish that it is a creditor of Chadmoore. *See Alexander v. Anstine*, 152 P.3d 497, 502 (Colo. 2007) (holding creditors may have a claim against officers and directors for breach of fiduciary duty during insolvency).

*Improper Shareholder Distribution*

The Supreme Court of Colorado has held that creditors may directly sue an officer or director who has authorized improper shareholder distributions under Colorado law. *See Ficor, Inc. v. McHugh*, 639 P.2d 385, 392-94 (Colo. 1982).

*Fraudulent Transfer*

Under Colorado law, "a fraudulent transfer occurs if the debtor made a transfer with an actual intent to hinder … defraud any creditor, or in the alternative, without receiving a reasonably

16

equivalent value in exchange for the transfer or obligation." C.R.S. § 38-8-105(1)(a). *Great Neck Plaza, L.P. v. Le Peep Restaurants, LLC*, 37 P.3d 485, 491 (Colo. Ct. App. 2001).

For any of the above counts to be determined on a summary judgment basis, this Court must make a finding that the Chadmoore Put is valid and enforceable, and that Fund LLC is a creditor of Chadmoore. Whether or not the Chadmoore Put is consistent with dissolution is a question of fact, and cannot be determined as a matter of law.

*Enforceability of the Chadmoore Put*

Pursuant to Colorado law, a dissolved corporation is prohibited from transacting business not performed in the course of wind-up or liquidation. *See* C.R.S. 7-114-105 (2001).[11] Moore and Chadmoore contend that the Chadmoore Put is clearly inconsistent with acts required to wind up Chadmoore's business. Transactions within the scope of a corporation's wind up or liquidation

---

[11] Section 7-114-105 of the Colorado Revised Statutes provides:

(1) A dissolved corporation continues its corporate existence but may not carry on any business except as is appropriate to wind up and liquidate its business and affairs, including:
    (a) Collecting its assets;
    (b) Disposing of its properties that will not be distributed in kind to its shareholders;
    (c) Discharging or making provision for discharging its liabilities;
    (d) Distributing its remaining property among its shareholders according to their interests; and
    (e) Doing every other act necessary to wind up and liquidate its business and affairs.

(2) Dissolution of a corporation does not:
    (a) Transfer title to the corporation's property;
    (b) Prevent transfer of its shares or securities, although the authorization to dissolve may provide for closing the corporation's share transfer records;
    (c) Subject its directors or officers to standards of conduct different from those prescribed in article 108 of this title;
    (d) Change quorum or voting requirements for its board of directors or shareholders; change provisions for selection, resignation, or removal of its directors or officers or both; or change provisions for amending its bylaws or its articles of incorporation;
    (e) Prevent commencement of a proceeding by or against the corporation in its name; or
    (f) Abate or suspend a proceeding pending by or against the corporation on the effective date of dissolution.

(3) A dissolved corporation may dispose of claims against it pursuant to sections 7-90-911 and 7-90-912.

include those that "prevent a corporation from continuing the operation of the business for which it was organized." *See In re Morris*, 30 F.3d 1578, 1583 (7th Cir. 1994) (affirming bankruptcy court holding that conveyance of large parcel of farm land was part of winding up as the transaction was consistent with liquidating and settling the affairs of the business). For example, a corporation would not likely be prohibited from collecting on a promissory note or other receivable, distributing property to shareholders, disposing of corporate property that will not be distributed to shareholders and other acts consistent with the winding up of affairs. *See Morris*, 30 F.3d at 1583; *Awanderlust Travel Inc. v. Kochevar*, 21 P.3d 876, 877 (Colo. 2001); *see also* COMMENTS IN KRENDL, 1A COLORADO PRACTICE: METHODS OF PRACTICE, COLORADO BUSINESS CORPORATION ACT DESKBOOK § 7-114-105 (2004-2005 ed.).

The parties agree that Chadmoore invested in other debentures during its dissolution, however, they disagree as to the categorization of those debentures, as compared to the Chadmoore Put. Fund LLC points to Chadmoore's August 2005 Form 10QSB, which notes that Chadmoore had, as of June 30, 2005, approximately $12 million of investment in debt securities. Chadmoore notes that most of its investments were in AAA graded debentures and those investments had a clear benefit to the estate, while the Chadmoore Put was risky and completely out of line with the rest of its portfolio. Fund LLC claims this argument is nothing but an expression of regret about the business judgment exercised by Moore, but in fact, the type of investment is substantially related to the question of whether the Chadmoore Put can be categorized as an investment consistent with dissolution. Chadmoore contends that because the Chadmoore Put could be called on as late as 2008 and Chadmoore was scheduled to wrap up its dissolution activities in 2007, the execution of the Chadmoore Put could not possibly be consistent with its dissolution.

Ultimately, the determination of whether the Chadmoore Put is consistent with winding up and consistent with other Chadmoore investments during dissolution is a factual determination. *See Morris*, 30 F.3d at 1583 (7th Cir. 1994). If the execution of the Chadmoore Put was an action prohibited by the Colorado dissolution statute, the contract may not be enforceable.

## CONCLUSION

While there are issues of fact that must be determined relating to several of the outstanding counts, as a matter of law, summary judgment is granted in Fund LLC's favor on the count for breach of implied warranty of authority, and in Moore's favor for dismissal based on the count for Colorado Business Corporations Law.

In accordance with Rule 54(b), the judgment submitted should indicate that although not all counts of the Complaint have been determined, the judgment is a final judgment. *See* FED. R. PRO. 54(b) (stating, "court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."); see also *Ginett v. Computer Task Group,* 962 F.2d 1085, 1091 (2d Cir.1992). The Second Circuit has ruled that Courts should not restrict the use of Rule 54(b) to cases which are " 'unusual', 'exceptional', or 'extraordinary" ' but should instead be guided by the " 'interest of sound judicial administration." ' *Id.* at 1095 (*quotingCurtiss-Wright* 446 U.S. at 8). Thus, district courts should consider the possibility that "the ultimate dispositions of the claims remaining ... could either moot [the decision of the appellate court] on the appealed claim or require [the appellate court] to decide issues twice." *Ginett,* 962 F.2d at 1094. Other considerations taken into account include

the financial stability of the parties, and whether the determination of the instant decision on an appellate level might conclude long-standing litigation between the parties. *See Lankler Siffert & Wohl, LLP v. Rossi*, 2004 WL 541842 (S.D.N.Y. 2004).

Summary judgment having been entered in Fund LLC's favor on the breach of implied warranty of authority count, Fund LLC is entitled to the relief requested on that claim. If the judgment were not final and appealable, however, the parties would likely be inclined to pursue the counts of the Complaint that could not be determined as a matter of law. If this Court were affirmed, these parties might finally put to bed their disputes. This would require time consuming and expensive discovery and further litigation. Additionally, Moore's counsel has represented that while these proceedings are pending, he is unemployable.

Therefore, the Court directs that the judgment be certified pursuant to Rule 54(b), so that the controversies between these parties might be finally determined.

SUBMIT AN ORDER AND JUDGMENT CONSISTENT WITH THE ABOVE RULING, AND TAKING INTO ACCOUNT THE SETTLEMENT PROCEEDS RECEIVED PURSUANT TO THE CHADMOORE SETTLEMENT AGREEMENT AND THE RADUSCH SETTLEMENT AGREEMENT.

Dated: October 3, 2007                                    /s/ Hon. Burton R. Lifland
       New York, New York                                 United States Bankruptcy Judge